Please state your appearance. Good morning, and may it please the Court. My name is Randolph Gaw, and I represent Plaintiff Appellate Thymes Solutions. Could I ask you please to keep your voice up because I'm having trouble hearing? Is your microphone on? I'm wondering if the microphone is on. I'll turn the volume up. Okay. Go ahead. Try now. I apologize, Your Honor. You're fine now. Again, my name is Randolph Gaw, and I represent Plaintiff Appellate Thymes Solutions, and whatever time I have remaining, I would like to reserve it for rebuttal. For my argument today, I'll start by addressing the Court's three questions, and if I still have time, move on to the Lanham Act claim. Turning to the Court's first question, I am not aware of any precedential California appellate decision that definitively applies the litigation privilege to pre-litigation communications that did not expressly propose or threaten to file suit. Two quick notes. I use the statement pre-litigation communications recognizing that the Court's question used just the word communications, but I assume that the Court's primarily interested in pre-litigation communications given the context of this appeal. You're right. Thank you, Your Honor. And second, I use the qualifier definitively in light of TP Link's 28-J letter yesterday regarding the Trinity Risk case. Now, based on the opinion in that case, it is somewhat ambiguous as to whether the communications addressed in Trinity Risk proposed or threatened to file suit, as elaborated by me in my responding 28-J letter. But even assuming that Trinity Risk did not involve any expressed mentions of litigation, it is important to note that that was a case about communications between eventual parties to a lawsuit. That's analytically distinct from this case, which involves wrongful communications made by a party to a third party. For cases with such fact patterns, there are several California Court of Appeal opinions, precedential, that have expressly held that for the litigation privilege to apply to a pre-litigation communication, there must have been some verbalization about the potential of a lawsuit. In other words, it is an objective standard, not a subjective standard. And this is in addition to the requirement that the potential lawsuit be both imminent and contemplated in good faith. The cases I'm referring to are Strawn v. Morris, which came out in 2019, and Kettler v. Gould, which was published in 2018. Both of these cases are cited in the briefs, of course. The most analogous of these cases is Kettler, and it is instructive as to the proper disposition of this appeal. In Kettler, the cross-complainants brought a defamation claim against the cross-defendants, because the cross-defendants told some third parties that the cross-complainant was engaging in unlawful conduct. The cross-defendants' anti-slap motion was denied, however, because the Court of Appeal held that the litigation privilege did not apply, because none of the cross-defendants' statements to the third party mentioned litigation in any way. Here, defendants' complaints to Amazon similarly did not allege unlawful conduct by Thymes, and similarly did not mention litigation in any way. Also in Kettler, the cross-defendants had argued that the litigation privilege should apply anyway, because their statements had a connection or logical relation to the eventual lawsuit. But the Court of Appeal also rejected that argument, because merely having a connection or logical relation to an eventual lawsuit isn't enough for the litigation privilege to apply in the first instance, let alone to apply to a pre-litigation communication. Counsel, before you run out of time, I'd appreciate your addressing, if you would, the third question about the Sherman Act. Yes, Your Honor. Turning to the Court's third question, I don't believe we ever used the words restricted output in the Fourth Amendment complaint, but we do allege facts satisfying that element, which can be found in paragraphs 34 and 63 to 64 in the Fourth Amendment complaint. That is excerpts of Record 47-48 and 56-57. And the basic gist of those allegations is that defendants have eliminated up to 90% of Amazon-based resellers of TP-Link WLAN products, and that many of these resellers also sold other WLAN products. But that says nothing about whether other competitors could come into the market. That talks about the Amazon marketplace, but that's not the only marketplace, is it? That's correct, Your Honor. We do allege a separate, I believe, product and geographic market consisting solely of the Amazon marketplace because we believe as its dominant position in e-commerce, it really should constitute an independent marketplace on its own. And the elimination of these resellers basically artificially restricts the supply of WLAN products available to consumers through e-commerce channels, thereby allowing TP-Link to continue charging super competitive prices for WLAN products. So your argument basically is we satisfied it because we narrowed the market to match what we can show, not that that is – well, okay, I understand your argument. Your best case on that is what? It's simply rebel oil, Your Honor. We've alleged product market and geographic market, and there's restricted output in those markets. Let me go back and ask you about the litigation bar. If the litigation privilege doesn't apply, have you – has Tynes Solutions otherwise demonstrated a probability of success on the merits with respect to the state law claims? Yes, Your Honor. Simply at its core, the defendants falsely accused Tynes of selling counterfeit products, and it was objectively baseless because they made the accusation before they even received the products at issue. They ordered the product on January 18, 2018. The product was not delivered until several days later, but on January 19, 2018, they attested having received the product and saying that it was counterfeit. Counterfeit has a very specific legal meaning, Your Honor, and so therefore that constitutes trade libel, and it certainly constitutes the economic interference torts under California law. And all we are required to do under the anti-SLAPP analysis is to present prima facie facts showing that we can prevail on the claims, and I think those facts are more than sufficient. And so if we can get to the Lanham Act. What's your best argument that T.P. Lincoln and now I guess it's a different name, Auction Brothers, violated the Lanham Act? Well, Your Honor, the literal language of Section 43A appears to encompass this type of situation. It was commercial speech that falsely disparaged the character of Tynes' products. There is no case that they're squarely on point in this situation because in coastal abstract, which I believe was the last time this court addressed the requirements of commercial advertising, it simply held that the commercial, as one of the elements, that the commercial advertising must be sufficiently disseminated to the relevant purchasing public. But it never defined what could constitute the relevant purchasing public. Well, Amazon is not a purchaser. It doesn't buy anything. It does not buy anything, correct, Your Honor, but it is in a commercial relationship and it acts as a gatekeeper. Is there any case of which you were aware that applies the Lanham Act to communications to a non-purchaser that may be an intermediary of some sort but that is not a purchaser at wholesale or in any other way? In this circuit, no, Your Honor. At the court appeal level, I'm not aware. In district courts, yes, if Your Honor wishes some citations. For example, Garmin— No, it wasn't. Then I'd appreciate a 20-J letter with those rather than taking up the time now. I will do so, Your Honor. But with respect to coastal abstract, that was a case in 1999. Before anyone really could anticipate the rise of dominant e-commerce marketplaces held, you know, managed by people like Amazon, by Apple, by Google, where they have sole control over billions of dollars of interstate commerce. I mean, the reality, you know, of the world we live in now, accelerated by the pandemic, of course, is that much of commerce will be transacted online. And there is no case on point, one way or the other, addressing the applicability of the Lanham Act to situations like this where— So we would be the first to do that in this case? To my knowledge, yes, Your Honor. Do you want to reserve the rest of your time? Yes, but Your Honors had the second question regarding Norah Pennington. Oh, go ahead. So very quickly, the Supreme Court has not addressed Norah Pennington in the pre-litigation context. With respect to this court, there is one potential case that has applied Norah Pennington to statements that don't expressly propose or threaten litigation. That's B&G Foods v. Embry, which was published by this court on March 17 of this year, 2022 Westlaw 804287. But that was a Prop 65 case that has a statutory notice of violation. And so the panel held that the statutory notice of violation is covered by Norah Pennington because it's a prerequisite for a plaintiff to file a private right of action and therefore it, quote, essentially threatens litigation against an alleged violator. So the precedents from this court have been, at least the fact patterns are, for Norah Pennington to apply. There either has to be an expressed threat of litigation or the communication must be a statutory prerequisite to filing litigation. Thank you, Your Honors. Thank you. Counsel, please state your appearance. May it please the Court. My name is Prashant Chennakasevan, and I represent TP Link USA Corporation. Given the substantial overlap of issues here, I will also be addressing any allegations against Auction Brothers, but Auction Brothers is represented by separate counsel if the panel has questions. And I'd like to start, as my colleague did, with addressing the Court's three questions and then moving on to the Lanham Act, as he did as well. Starting with the first question, we believe that California law is clear that a pre-litigation communication to a party with interest need not threaten litigation expressly. Is there any other case you have besides Trinity Risk, which to me seems quite distinguishable? Yes, Your Honor, and I think this is probably closest to the line of cases which ends in Trinity, which starts with Neville v. Chudikoff. And in Neville v. Chudikoff, there was a pre-litigation communication to third parties with whom a potential defendant may do business, informing them that a potential defendant has violated his trade secrets and confidentiality obligations with the plaintiff. And in that case, the letter at issue said, we reserve all rights and intend to pursue all rights, but did not expressly state that we are going to sue the potential defendant or threaten to sue the third parties themselves. In addition, I would like to draw the Court's attention, if I may, Can I ask you real quick, do you agree that the litigation privilege here, that your complaints should be, I think, I'm sorry, let me phrase it this way. I'm trying to understand why your complaints should be protected from suit by California's litigation privilege when they don't mention litigation, especially when viewed in the light most favorable to time solution. And I guess the specific question that I ask is, do you agree that they do not mention litigation? Not quite, Your Honor. And again, we do have to keep in mind that the actual communication itself is not in the record, but we do have the allegations, which we must look at. And this is at ER 156, the second amended complaint. And Thymes alleges that one of the statements made to Amazon was, I have a good faith belief that the contents described above violates my rights described above or those held by the rights owner, and that the use of such content is contrary to law. And that's what Thymes alleges was conveyed to Amazon by Auction Brothers on behalf of TP Link. Now, they allege that this was essentially a sham statement. Again, under California law, that's irrelevant because the litigation privilege is absolute. And we also have to keep in mind that complaints to Amazon, which is, of course, the largest e-commerce marketplace in the United States, are form-based. So typically, any rights holder who is making a notification to Amazon that the marketplace is hosting products that may violate rights does so using a click-through form, which has several options. And again, we are limited to the allegations in the complaint. But the allegations in the complaint themselves read that what was stated to Amazon was TP Link's belief that its rights were violated and that the placement and sale of products on the platform are contrary to law. Now, the only thing that's missing here is if you don't take it down, we're going to go ahead and sue you. Now, we submit that there is no California authority that requires express threats of litigation. I would like to address the Kettler decision that my colleague, Mr. Gott, discussed a minute ago. Counsel, I'm having trouble with your reasoning. A complaint by a person that its rights are being violated can be a reference to hoping that the state authorities will prosecute the violation of rights. In other words, that there may be litigation in a criminal sense or in a regulatory sense, but not necessarily does it indicate that litigation will be commenced by the complaining party. Isn't that possible? It's possible, except that here the complaint was to a private party, Amazon, with interest. And California courts have addressed this, including in the Blanchard v. DirecTV case, where the court held that when you send a pre-litigation communication to a party with interest, and in the middle it was a third party in Blanchard, it was the potential defendants themselves, one of the goals of doing that is to try to stop the infringing conduct or the unlawful conduct. If the conduct does not stop, then a potential plaintiff has a choice to make, whether or not to pursue litigation and incur the expenses of litigation. And, of course, as the California Court of Appeal held in Blanchard, not every pre-suit demand leads to litigation. Here's my question about that. To me it is a very ambiguous bunch of cases from California as to just how pre the pre-litigation communication can be and still be covered by a litigation privilege. Is this an issue that should be certified to the California Supreme Court? It seems that it arises a lot because of the wide use of the anti-SLAPP statute and the pre-litigation litigation privilege. To the extent that the court finds ambiguity, I don't believe that this court can hold that the anti-SLAPP statute does not apply based on the existing body of law. So, Judge Graber, I agree with you that to the extent that the court is inclined to go that way, I just don't think there's enough California authority for this court to do that and hold in Times' favor. But I'm not sure that the court quite has to reach that decision here because what we do have, and again this is in the record at ER 184, as soon as the first communication was sent to Amazon, Times responded with a letter from outside counsel. So, even if we have certain cases and my colleague Mr. Goss cites Edwards, which is a 1999 case which the California Court of Appeal has moved away from, where the court held that five years is too long. That's not what we have here. So, what we have here is a complaint to Amazon, right away, Times lawyers up and sends a letter from outside counsel at ER 184, essentially challenging that it is engaged in trademark counterfeiting. Following that, we have a series of additional communications to Amazon. Amazon conducts an investigation, and this is at SER 9-36, and invites Times to respond. Times never does, and Amazon makes the decision to expel a seller from its marketplace. And that's not a TP-Link decision or an Auction Brothers decision. I would like to also address, if I may, the antitrust issue. And this court has never held that a threat bearer allegation of the type we have here is sufficient to state a claim in the post-Twombly world. And again, I would like to pick up on the court's question as to whether, and Judge Graber's question specifically, as to whether or not there's even any allegation of harm to the interbrand competitive market, which is what the antitrust law is concerned about. So even if we accept as true all of the allegations and the complaint, which are, at best, conclusory, what we have here is a decision by TP-Link, of which there is no allegation or facts to support an allegation that it has any monopoly power in the doubly land market, and there's no allegation of an effect on the interbrand market. So there's no reason why, in a consumer electronics space, another competitor could not come in. And to the extent that TP-Link is selling at super competitive prices, undercut TP-Link. What we have here is an intrabrand restriction, where TP-Link is restricting the resale of its product by unauthorized retailers to the extent the unauthorized retailer uses the TP-Link trademark and conveys to the public that the goods are somehow substantially similar. And they're not, because the consumer does not get a warranty from TP-Link. With respect to the Lanham Act, I would like to say there's no case law stating that a marketplace is a relevant consumer. There has been no allegation here that the consuming public was ever exposed to the at-issue statements. And in the 30 seconds I have left, I would like to come back to the Kettler case. And that's because the California Court of Appeal has distinguished between third-party communications that relate to the underlying dispute and third-party communications that are gratuitously defamatory. And this goes back to a case called Wynn v. Proton, which is cited in the DeVille v. Judicoff decision, where a communication to a third party stating the defendant has engaged in unrelated wrongful conduct or unrelated unlawful conduct may not be protected by the anti-SLAPP statute. What is protected by the anti-SLAPP statute and Section 47 are communications to third parties about the conduct involving the parties to the litigation. So here we have a communication to Amazon with TP-Link's concerns that there is trademark infringement and specifically trademark copyright, I'm sorry, trademark counterfeiting by Times on the Amazon platform. And with that, I'm happy to answer questions, but I see that I'm over time by about 30 seconds. Thank you, counsel. Thank you, Your Honor. Mr. Gaw, I'll give you one minute. I think you ran out of time, but I'll give you one minute. Thank you very much, Your Honor. I'm grateful. Just two very quick points from me. First, opposing counsel said that the Edwards case is moved away from, from the California Courts of Appeal. That's not correct. In 2019, the Strawn v. Morsk panel cited Edwards favorably for its actual verbalization requirement, and also Edwards was favorably cited by the California Supreme Court in 2007 in the Action Department v. Santa Monica case. My second point, regarding the contents of the complaint, we do have Mr. Fickman's declaration, that's excerpts of Record 116, where he attests as to what he thinks Amancia had put into the complaint form. There's no mention of litigation whatsoever. But more importantly, counsel had characterized it as a statement that rights were being violated. Well, we know that's not enough to claim that rights are being violated under this court's precedent in Macafee Trump University, because in that case, the plaintiff had essentially said, you know, I think my rights are being violated. I can go. I'm willing to take any action, including legal action, to vindicate them. And this panel held that was insufficient evidence that litigation was imminent or being contemplated in good faith. Thank you. Thank you very much. Thank you both for your oral argument presentations. The case of Time Solution v. TP Link, USA Corporations and Auction Brothers Incorporated is now submitted. And that concludes our docket for today. Thank you very much. All rise.
judges: MURGUIA, GRABER, BEA